# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **RONALD G. BUFORD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14CV00012 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **AMMAR'S, INC.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Terry N. Grimes and Brittany M. Haddox, Terry N. Grimes, Esq., P.C., Roanoke, Virginia, for Plaintiff. Michael N. Petkovich and Meredith F. Bergeson, Jackson Lewis P.C., Reston, Virginia, for Defendant.*

This action involves the plaintiff's claims of race discrimination against his employer under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq, and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. Discovery has been completed, and pending before the court is the defendant's Motion for Summary Judgment.[1]

Based on the record, I conclude that summary judgment for the defendant is proper. Drawing all inferences in the plaintiff's favor, the undisputed facts demonstrate that the plaintiff has failed to raise a genuine issue of fact regarding

---

[1] The motion has been fully briefed and is ripe for decision. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

the defendant's proffered legitimate reasons for reducing the plaintiff from a full time employee to part time, with a resulting loss of benefits, namely, an economically-motivated reduction in force and the plaintiff's poor work performance. Because the plaintiff has not shown that his employer's reasons were a pretext for discrimination, the defendant is entitled to summary judgment.

I.

Following a timely charge with the Equal Employment Opportunity Commission ("EEOC") and having received an issuance of the right to sue, the plaintiff timely filed suit in this court on March 10, 2014. Jurisdiction exists pursuant to 28 U.S.C. § 1343.

The facts contained in the summary judgment record, and viewed in the light most favorable to the plaintiff, are as follows.

Ammar's is a family-owned company that operates 19 Magic Mart stores in southern West Virginia, eastern Kentucky, western Virginia, eastern Tennessee, and central North Carolina. In addition, Ammar's operates a warehouse in Tazewell County, Virginia. Ammar's employs over 800 people.

The plaintiff has worked for 24 years as a receiving clerk in Ammar's' warehouse. Of approximately 100 warehouse employees, the plaintiff is the oldest, and is one of three African-Americans. In February 2013, at age 68, the plaintiff's

2

hours were reduced from 40 to 20 hours per week, and his benefits were eliminated.

The plaintiff's job duties as receiving clerk have remained substantially unchanged during his employment at Ammar's' warehouse, and include unloading trucks, counting and sorting merchandise to be distributed to individual stores, and processing invoices. For his work, the plaintiff received annual wage increases until 2008, but has not received a wage increase since. Despite being the most senior employee in his department, he currently earns the lowest annual salary due to his part-time status and lack of wage increases. Ammar's has a policy of issuing yearly wage increases to hourly employees for good performance, although the plaintiff claims that he was never informed of the reasons why he was not given a raise.

In April 2009, the plaintiff was given a written warning for unsatisfactory performance, on the basis that he had failed to improve his work pace and attendance despite cautions from the warehouse and personnel managers. The plaintiff received a second warning in August 2010 for failing to improve his pace and quantity of production.

Beginning in 2011, Ammar's fell on hard times. According to Ammar's' undisputed financial records, the business's net income dropped precipitously between fiscal years 2010 and 2011, and the business reported growing net losses

3

Case 1:14-cv-00012-JPJ-PMS   Document 84   Filed 01/30/15   Page 3 of 14   Pageid#: 794

between fiscal years 2012 and 2013. In response, Ammar's implemented a company-wide reduction in expenses, including a mandatory reduction in work force in early 2013. The records show that Ammar's' work force decreased from 759 full-time and 167 part-time employees in January 2012 to 525 full-time and 415 part-time employees in January 2014. In addition to the workforce reduction, Ammar's closed two of its 21 Magic Mart stores.

As a result of its financial difficulties, Ammar's' top official, K.A. Ammar, Jr., mandated a reduced cap on working hours for each Magic Mart store and the warehouse. The authority to decide which employees would be laid off or reduced to part-time status, however, was delegated to the managers at each location. The three warehouse managers selected the affected warehouse employees, and claim that they based their decisions primarily on performance. Based on the plaintiff's two prior written warnings, his failure to obtain merit-based wage increases since 2008, and their observations that plaintiff's work quality was the worst in the warehouse, the managers selected the plaintiff for hourly reduction. The managers claim, however, that out of deference to his seniority, they chose to reduce plaintiff's hours rather than terminating him. Instead, they chose to lay off a white, 36-year-old male. Ammar's claims that the plaintiff was not replaced by any single individual, but that his work was distributed among the remaining warehouse workers.

4

The plaintiff has a different perspective on these events. He questions the scope of the February 2013 reduction in force, noting that it was not documented as part of a formal policy, and contends that he was singled out for reduction in hours and benefits based on his race and age. He asserts that the written warnings used to justify his demotion were based on his performance of tasks that were ancillary to his main job duties, and that they were in fact a pretext for discrimination.

In support of these allegations, the plaintiff claims that after his first written warning, one of his supervisors, Jimmy Belcher, instructed him not to mention his reprimand to anyone. Further, the plaintiff's immediate supervisor, John Lewis, testified in his discovery deposition that he had expressed frustration after the plaintiff had received the second written warning, because Lewis had received no prior notice of the warning and had actually been trying to get the plaintiff a raise at that time. The plaintiff disputes that the warehouse managers made the decision to reduce his hours in February 2013, speculating instead that K.A. Ammar, Jr. personally made the decision based on impermissible racial and age-based prejudices in an effort to induce him to quit. He claims the warehouse employees were assured that their hours and wages would not be cut despite the economic downturn, and that he was never told that the reduction in hours and benefits had anything to do with his performance. Although Ammar's' claims that the

5

plaintiff's remaining work was distributed among a number of employees, the plaintiff asserts that he was directly replaced by a 34-year-old white male.[2]

In August 2014, after the plaintiff had filed suit, Ammar's issued the plaintiff a third written warning for poor performance, along with a mandated "Performance Improvement Plan." According to the defendant, the plaintiff had the worst production record in his department at that time, and warehouse security cameras revealed that the plaintiff was unproductive for long stretches at a time. After this warning, however, the plaintiff apparently dramatically improved his performance. The plaintiff believes that Ammar's purposefully gave him projects that took longer to complete prior to the 2014 warning in order to make him appear less productive in comparison with other warehouse employees, and that the production records do not accurately reflect his performance. According to the

---

[2] In its Reply Brief, the defendant made factual assertions, supported by affidavits, intended to respond to some of the claims made in the plaintiff's Response in Opposition to Summary Judgment. These claims related to Mr. Ammar's salary, the plaintiff's work performance, and the delegation of work after the plaintiff was moved to part-time status. The plaintiff has filed a Motion to Strike certain assertions raised in the defendant's Reply Brief, on the ground that these facts come from affidavits that were not submitted with the defendant's original Motion for Summary Judgment. Despite Rule 6(c)(2)'s general disfavor of reply affidavits, however, the Rule has a limited exception when the affidavits "address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party," as happened here. *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992). In any event, the plaintiff's Motion to Strike is inconsequential, because I do not rely on any new factual assertions made in the defendant's Reply Brief to conclude that summary judgment for the defendant is proper.

plaintiff, his performance appeared to improve after the warning because he was assigned easier projects.

In September 2014, the plaintiff was restored to full-time work for several months to help with the busy Christmas season, but his benefits were not reinstated. He was returned to part-time status on November 10, 2014.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the court must view the facts and draw all inferences in favor of the non-moving party. *Fiel v. Va. Emp't Comm'n*, 929 F. Supp. 972, 975 (W.D. Va. 1995) *aff'd,* 86 F.3d 1149 (4th Cir. 1996). Although "[s]ummary judgment is generally disfavored for claims of employment discrimination where issues of intent are involved," cases nonetheless exist where summary judgment may be appropriate. *Id.* On a motion for summary judgment, the party who will carry the burden of proof at trial must be able to show that there exists a genuine issue of material fact as to every element of his claim. *Id.* "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." *Thompson v. Potomac Electric Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citation omitted). If the evidence is "merely colorable, or is

not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (internal citations omitted).

Title VII and the ADEA prohibit employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on the individual's race and age, respectively. *See* 42 U.S.C. § 2000e-2(a)(1) (barring discrimination based on race); 29 U.S.C. § 623(a)(1) (prohibiting discrimination based on age). Since the plaintiff here does not claim to have direct evidence of discriminatory intent, his claims under Title VII and the ADEA are subject to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a prima facie case of employment discrimination, including that: (1) he is a member of a protected class; (2) he was qualified for his position and his performance was satisfactory; (3) despite his qualifications, he suffered an adverse employment action, namely, reduction of hours and benefits; and (4) he was replaced by an individual outside of the protected class. *See id.* at 802. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to respond with evidence that it acted with a legitimate, non-discriminatory reason. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). If the defendant is able to make this showing, the burden shifts back to the plaintiff to present evidence that the defendant's articulated reason was

8

pretext for unlawful discrimination. *Id.* "Although the evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Beginning with the elements of the prima facie case, the plaintiff here is African-American and was 68 years old at the time of his demotion. Accordingly, the plaintiff unquestionably belongs to protected classes based on his race and age. *See* 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 631(a). Second, the plaintiff has raised a genuine issue of fact as to whether he was qualified for his position and performing his job in a satisfactory manner. Although the defendant relies primarily on the plaintiff's poor performance record, the plaintiff has also produced some evidence that his work was satisfactory. *See Love-Lane*, 355 F.3d at 787 (finding genuine issue of fact as to plaintiff's job performance where, despite undeniable evidence of deteriorating performance, plaintiff also produced evidence that she continued to perform at satisfactory level). The plaintiff notes that he has a bachelor's degree, 11 years experience working for a lumber company, and 24 years of experience in the receiving department at Ammar's. For nearly two decades of employment, the plaintiff never received a complaint from his supervisors. Even after his work performance apparently declined in recent

9

years, the plaintiff received some positive feedback regarding his attendance and work performance, and one of his supervisors tried to procure him a raise. Although the company managers claim that they chose not to terminate the plaintiff out of deference to his seniority, a reasonable jury could infer from the evidence that the plaintiff was not terminated because he was competent at his job. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and are not for the court to decide on summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (internal quotation marks and citation omitted).

Third, the parties do not dispute that the reduction of the plaintiff's hours and benefits qualifies as an adverse employment action. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (identifying demotion and decrease in pay or benefits as "typical" evidence to support adverse employment action element of Title VII claim).

Finally, the plaintiff has raised a genuine issue of fact that his position remained open to other, similarly qualified applicants. The plaintiff has presented evidence that he was replaced with white, younger male workers. Although the defendant claims that the plaintiff was not directly replaced, but that his duties were distributed among the remaining workers, it does not dispute that other white, younger workers were restored to full-time status while plaintiff remained part-

10

time.  *Cf. Christmas v. Arc of the Piedmont*, No. 3:12CV00008, 2013 WL 718812, at *4 (W.D. Va. Feb. 27, 2013) (finding that plaintiff could not establish prima facie case where plaintiff's position, along with position filled by a white male, were both eliminated and neither were replaced).

The plaintiff, then, has arguably established a prima facie case of employment discrimination.  Therefore, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the plaintiff's reduction in hours and benefits.  *Love-Lane*, 355 F.3d at 787-88.  It is uncontested that Ammar's implemented a widespread reduction in force in February 2013, in response to its declining financial condition.  It is well-established that an employer's effort to reduce expenses due to economic hardship constitutes a legitimate, nondiscriminatory reason for laying off employees or reducing their hours.  *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994) (noting that antidiscrimination laws are "not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges").  The plaintiff contests the extent of Ammar's' financial problems, noting that executive compensation has remained stable, but does not dispute that the company's net income plummeted in the last several years.  Despite the plaintiff's assertion that the reduction in force was not documented or part of any formal policy, the defendant has produced records unequivocally demonstrating that the

11

number of full-time workers drastically declined during this period while the number of part-time workers commensurately increased, both in the warehouse and throughout the company. Several workers were laid off completely, including a 36-year-old white male who was employed in the warehouse along with the plaintiff.

Further, contrary to the plaintiff's contention that the decisions regarding affected employees were entirely subjective, the defendant has produced evidence that the plaintiff's performance was among the worst of warehouse employees. There is no question that performance is a legitimate criterion by which to select employees for layoffs or reduced hours. *Ferris v. AAF-McQuay, Inc.*, No. 5:06-CV-00082, 2007 WL 2437685, at *4 (W.D. Va. Aug. 22, 2007). Here, it is undisputed that the plaintiff received two written warnings and that he had not received a merit-based wage increase for five years prior to the reduction in force. Further, his supervisors uniformly testified that the plaintiff's performance was the worst in the warehouse. The plaintiff does not contest these facts, but asserts without supporting evidence that his write-ups were "ridiculous" and that he was intentionally given assignments that would make him appear less productive. The plaintiff is entitled to his opinion of his work product, but the Fourth Circuit has "repeatedly explained that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *DeJarnette v. Corning Inc.*, 133

F.3d 293, 299 (4th Cir. 1998) (internal quotation marks and citations omitted). Further, while the plaintiff points to limited evidence indicating that his performance may have been satisfactory at times, such evidence is insufficient to raise a genuine issue of fact as to whether his supervisors' decision to reduce his hours was legitimate, given the undisputed evidence that the plaintiff's performance was among the worst of any warehouse employee prior to the reduction in force.

      The plaintiff argues that the defendant's reasons for giving him warnings for poor performance and ultimately moving him to part-time status were pretextual, but his assertions amount to "mere unsupported speculation" that is insufficient to defeat a summary judgment motion. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). The plaintiff offers no evidence to support his claims that the warnings he received and lack of pay raises were motivated by discrimination, and "there is nothing in the record to suggest as a reasonable probability that [his supervisors] did not truly believe that [his] job performance was poor and at a level below [his] co-workers." *Ferris*, 2007 WL 2437685, at *4. Further, the plaintiff's argument that his reduction in hours must have been pretextual based on his supervisors' purported reassurance that the warehouse employees' jobs would not be cut, and their neglect to inform him of his poor job performance, is unpersuasive. Assuming the truth of these facts, they

do not, in themselves, raise any sort of inference of discrimination. "The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [the plaintiff's] proffered reason . . . is correct." *Reeves*, 530 U.S. at 146-47 (internal quotation marks and citation omitted). "It is not enough to disbelieve the defendants here; the fact-finder must believe the plaintiff's explanation of intentional . . . discrimination." *Love-Lane*, 355 F.3d at 788. Here, as in *Love-Lane*, the record provides no basis by which a rational jury could accept the plaintiff's theory. *Id.; see also Ferris*, 2007 WL 2437685, at *4.

III.

For these reasons, it is **ORDERED** that the plaintiff's Motion to Strike Certain Evidence (ECF No. 80) is DENIED and the defendant's Motion for Summary Judgment (ECF No. 67) is GRANTED. A separate final judgment will be entered herewith.

ENTER: January 30, 2015

/s/ James P. Jones
United States District Judge